UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MADELINE FROMAGEOT, *Individually, as Administrator of the Estate of Paul Fromageot, Natural Mother of (FF) (CF) (JPF) (SF), and as Trustee for the Fromageot Trusts (CF) (JPF) (SF)*<br><br>  *Plaintiff*,<br><br>  v.<br><br>WILLIAM J. BRITT, BARBARA MILLER, HENRI FROMAGEOT, JUANA FROMAGEOT, HARTFORD LIFE, DOMINIC CARUSO, DREW BAUMAN, SHARON QUINN, MICHAEL WERNICK<br><br>  *Defendants*. | No. 3:21-cv-1165-MPS |

**RULING ON MOTION TO DISMISS**

  This case arises from a twenty-year dispute involving life insurance proceeds. In 1996, Paul Fromageot entered into life insurance policies issued by Hartford Life and Accident Insurance Company ("Hartford Life"). He listed his wife (Madeline Fromageot), his parents (Henri and Juana Fromageot), and his then only child (Francis Fromageot) as co-equal beneficiaries. Following Paul's untimely death in 2004, Hartford Life distributed the insurance proceeds accordingly. However, between 1996—when Paul initially assigned beneficiaries—and Paul's death in 2004, Paul had three additional children. Madeline claims that Paul updated his policies to make her and their four children his primary beneficiaries and that he had always intended for his parents to be only contingent beneficiaries. Madeline alleges that Hartford Life knew Paul had updated his policies but nevertheless failed to correctly disburse the proceeds.

  Since 2007, Madeline has brought lawsuits in both state and federal court, challenging the payment of these funds to Paul's parents. This suit is Madeline's most recent. Representing herself,

1

she is suing Hartford Life, Paul's parents, and the many attorneys who were involved in the prior litigation. Liberally construed, her complaint brings claims under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and Connecticut law, with nine of the complaint's twelve counts brought against Hartford Life. Those counts allege, in part, breach of fiduciary duty, failure to comply with a court subpoena, aiding and abetting, and breach of contract. Hartford Life has moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Because Madeline may not represent others while she is also representing herself, I DISMISS her complaint to the extent it asserts claims on behalf of Paul's estate, her children, or her children's trusts. Furthermore, because Madeline's ERISA claims brought in her individual capacity are time-barred by the terms of Paul's policy, I DISMISS those claims as well. I also decline to exercise supplemental jurisdiction over Madeline's remaining state law claims, and I DISMISS those claims without prejudice.

## I. BACKGROUND

The factual allegations below are taken from Madeline's second amended complaint and attached exhibits. ECF Nos. 140, 140-1, 140-2, 140-3. The Court accepts these allegations as true for the purposes of this ruling. That being said, the complaint itself is long, circuitous, and at times difficult to follow. Moreover, many of the allegations—including those related to discovery and other litigation conduct—are not relevant to Hartford Life's status as a defendant. As such, the Court discusses only those allegations that are in some way related to Hartford Life or the claims brought against it.

### A. Factual Allegations

Madeline and Paul Fromageot are the parents of Francis, Christine, John Paul, and Sophie Fromageot. ECF No. 140 ¶ 1. Paul, Madeline's husband, worked full-time for Alliance Capital, which offered its employees "Group and Optional Life Policies." *Id.* ¶¶ 51, 52. Hartford Life issued

or administered these policies. *Id.* ¶ 52. On November 18, 1996, Paul's first day of work at Alliance Capital, Paul enrolled in these policies by filling out enrollment forms provided by his employer. *Id.* ¶ 53; ECF No. 140-1 at 161-62. In the sections where Paul was to list his beneficiaries, the forms contained the following language: "If more than one beneficiary is named, the death benefit, unless otherwise provided herein, will be paid in equal amounts to the designated beneficiaries who survive the employee." *Id.* at 161-62. The forms also asked the employee to provide the percentage of the total proceeds each beneficiary was to receive—otherwise, the proceeds would be divided equally among them. *Id.*

Paul listed his wife Madeline, his son Francis, and his father and mother Henri and Juana as beneficiaries, in that order. *Id.* Though he did not designate a particular percentage of the proceeds that each beneficiary was to receive, *id.*, in listing "Madeline (wife) on the top line, Francis Fromageot (son) on the second line, [and] HENRI and JUANA FROMAGEOT (parents) on the third line," ECF No. 140 ¶ 353, Paul intended to list his wife and son as primary beneficiaries and his parents as "tertiary" beneficiaries. *See id.* ¶ 56 ("Paul Fromageot clearly indicated primary, secondary, tertiary by notating (wife) (son) (parent) in descending order on the intake form."). The complaint later alleges that "HENRI and JUANA FROMAGEOT always understood their son intended [them] be contingent beneficiaries." *Id* ¶ 357. Alliance Capital, however, failed to accurately enter these preferences into the software program it used to enroll employees. *See id.* ¶ 354 ("Due to a mistake by 'the employer[']s[ ] employee' who a few days after Paul's 'start date' failed to use the 'contingency column' when imputing contingent beneficiaries into the SAP software.").

In any event, Paul thrice updated his policies by enrolling each of his new children following their births, and these updates should have "superseded" the erroneously entered

3

preferences. *See id.* ¶ 53 ("Paul . . . updated his policy with the birth of his three additional children."); *id.* ¶ 355 ("The SAP screenshot[s] demonstrate the new start dates after each of the other three children are born superseding the employee's error. Proof of the enrollment of all four children was produced for the first time by the employer October 20, 2006 . . . ."). In updating his policies, Paul expected Madeline to place the proceeds in a fund dedicated to his children's education. *Id.* ¶ 60 ("[H]e wanted his wife to use the 'employer policy' as the education fund."); *id.* ¶ 69 ("[The defendant's] primary obligation was to support the intent of the decedent to use his HARTFORD LIFE policy for his children's educational benefit."). Hartford Life was aware of these updates to Paul's policies. *Id.* ¶ 303

Paul died on June 4, 2004. *Id.* ¶ 50. On June 8, 2004, Alliance Capital informed Madeline that "Paul had forgotten to update his enrollment with the birth of their three additional children." *Id.* ¶ 54. On June 10, 2024, Alliance Capital sent a letter to Henri and Juana (Paul's parents) seeking to "process" Paul's life insurance and requesting that the couple provide a copy of Paul's death certificate, his enrollment form, and complete an attached form (LC-3636-15) certifying themselves as beneficiaries. ECF No. 140-1 at 156. Upon learning that he and Juana were beneficiaries, Henri requested that Madeline "provide (2) certified copies of the death certificate." ECF No. 140 ¶ 424. Madeline, believing that the naming of Paul's parents as primary beneficiaries was a mistake, conveyed the copies of the death certificate to Henri with the understanding that Henri and Juana would deposit their share of the proceeds into the children's education fund. *See id.* ¶ 20 ("Plaintiff MADELINE FROMAGEOT released the vital record to HENRI FROMAGEOT to resolve what was believed to be Paul['s] mistake."); *id.* ¶ 166 ("[Henri] requested (2) two copies and received (2) copies of this vital record for purpose of conveyance to [the education] plans."). Henri then sent Paul's death certificate, his original enrollment form—

superseded by his subsequent updates to the policy—and a completed form LC-3636-15 to Alliance Capital. *Id.* ¶ 425. "On June 17, 2004, [Alliance Capital] . . . forward[ed] those documents to [ ] Hartford Life." *Id.* ¶ 426.

On July 6, 2004, Madeline had a "recorded conversation" with Hartford Life in which she approved Henri and Juana's claims, subject to the proceeds being deposited into the education fund. *Id.* ¶¶ 266-67 ("Hartford Life approved the claim only after the July 6, 2004 recorded conversation with the plaintiff confirming her approval to release the funds . . . At which point the conveyance was expected to take place as discussed with the employer."); *id.* ¶ 325 ("Hartford form LC3636-15 [was] executed with the 'defendants' signatures' for the purpose of conveyance to [the education] plans . . . ."). On July 9, 2004, Henri and Juana each received a letter informing them that Hartford Life approved their benefits claim and that $113,127.70 would be deposited into a Hartford Life Safe Haven Checking Account in their name. ECF No. 140-1 at 163-64. The money never made its way into the education fund. *See* ECF No. 140 ¶ 32.

Madeline first sued Paul's employer, Alliance Capital, in federal court in 2007. *See id.* ¶¶ 15, 84, 314; *Fromageot, et al v. Alliance Capital Management, LP*, No: 1:07-cv-02585 (S.D.N.Y. March 29, 2007). The suit netted her "a small settlement." ECF No. 140 ¶ 79. She then sued Paul's parents for unjust enrichment in New Jersey state court in 2009. *See id.* ¶ 80 ("Attorney DOMINIC CARUSO . . . filed an Unjust Enrichment action in Chancery Division, New Jersey Court of Equities, Essex County on March 4, 2009."); ECF No. 140-3 at 17-38 (memorandum opinion: *Fromageot v. Fromageot*, No. C-68-09 (N.J. Super. Ct. Ch. Div. Aug. 20, 2013)). The chancery court dismissed that case after concluding that "the evidence adduced at trial support[ed] the determination that Paul Fromageot was not misled by an ambiguity in the application form when he listed his parents as primary beneficiaries . . . ." *Id.* at 37. In 2011, Madeline set up trusts for

5

her children in Connecticut Probate Court again seeking to "retrieve the stolen assets." ECF No. 140 ¶¶ 2, 277.

On February 4, 2021, the probate court issued a subpoena to Hartford Life demanding "all documents associated with [Paul]'s Group and Optional Life policies."[1] *Id.* ¶ 405. Hartford Life has yet to fully comply with the subpoena. *Id.* ¶ 149 ("The Trumbull Probate would execute a court order on February 4, 2021 requesting all Hartford Life Documents. Those documents have not yet been produced by the HARTFORD LIFE."). Specifically, Hartford Life has failed to produce the updated enrollment forms, wherein Paul added his children as beneficiaries to the policy. *Id.* ¶ 362-63 ("The updated enrollment form can be found in the employee file forwarded to the HARTFORD LIFE by the employer . . . That file has not yet been produced by the HARTFORD LIFE to the plaintiffs. The updated 'proof of enrollment' included adding (CF) in 1998 (JPF) in 2000, and (SF) 2002."). Hartford Life did, however, produce some documents. Among them was a "demand letter" originally sent by Madeline's counsel to Henri and Juana and thereafter forwarded by the couple to Hartford Life. *Id.* ¶ 158 ("Plaintiffs discovered in response to the Hartford Life subpoena, that on March 3, 2007, HENRI FROMAGEOT forwarded Attorney Liebowitz demand letter . . . to the HARTFORD LIFE."). That letter informed Henri and Juana that Paul had "changed the beneficiaries of his life insurance policies so that any benefits would be paid to Madeline and their children." ECF No. 140-2 at 115. The letter went on to inform them that "[a]t the time he made those changes both of [them] became contingent beneficiaries . . . ." *Id.*

Hartford Life also produced a January 20, 2011 letter sent by the company to Henri and Juana "stating the claim was correctly distributed." ECF No. 140 ¶ 343; *see also* ECF No. 140-3

---

[1] In its motion to dismiss, Hartford Life appears to express some doubt as to whether the subpoena is genuine. *See* ECF No. 150-3 at 13. As it notes, the subpoena, ECF No. 19-2 at 19-20, is unsigned and, though it was issued on February 4, 2021, demands production "by 5PM, Friday February 5, 2021." ECF No. 150-3 at 13.

6

at 144 (the letter). But Henri and Juana were only able to obtain this letter after they falsely informed Hartford Life that Madeline was Paul's ex-wife. *See* ECF No. 140-1 at 71 ("They chose to deceive by claiming [Madeline] was the ex-wife in 2011, to obtain a letter containing a 'highly misleading statement.'"). Henri and Juana then submitted this letter to the judge in the New Jersey unjust enrichment action, who reviewed it *ex parte*. ECF No. 140 ¶ 273-274 ("Plaintiff wasn't aware that the HARTFORD LIFE letter gained by fraud *was reviewed by the trial court* until she received a response to the February 4, 2021, HARTFORD LIFE subpoena . . . the HARTFORD LIFE January 20, 2011 [letter was] gained by fraud and reviewed ex-parte by the trial Judge Kenneth Levy.") (emphasis in original).

Because the court in New Jersey could not consider the documents Hartford Life would later fail to produce, and because Madeline was unaware of and unable to challenge the *ex parte* review of the January 20, 2011 letter, her unjust enrichment action in New Jersey failed. *Id.* ¶ 300 ("The matter in New Jersey would not only fail due to the lack of the Hartford Life documents but the presentation of fraudulent documents."). Moreover, had Hartford Life "requested a subpoena," the "missing documents would have been discovered," and "the wire fraud would have been caught." *Id.* ¶ 302.

B. **Procedural History**

When Madeline filed this lawsuit in 2021, her complaint did not "state an adequate basis for the Court's subject matter jurisdiction," ECF No. 10, and she failed to timely file an amended complaint curing this defect. The Court therefore dismissed the case without prejudice. ECF No. 18. A year later, Madeline moved to reopen the case, attaching her amended complaint. ECF No. 19. Though the Court granted the motion, it also expressed doubts as to whether "the Amended Complaint states a claim that falls within this Court's subject matter jurisdiction . . . ." ECF No. 24. It was only because the amended complaint purported to invoke ERISA and contained

7

language "suggesting that Defendant Hartford Life was the administrator of an ERISA plan," that the Court found "the semblance of a federal claim . . . ." *Id.*

The Court again dismissed the case in 2023, after Madeline failed to properly serve Hartford Life and failed to respond to the Court's show cause order. ECF Nos. 31, 32. In 2024, Madeline again moved to open the case, ECF No. 33, and again, the Court granted the motion. ECF No. 38. Though the prior order of dismissal was "without prejudice with respect to the state law claims," ECF No. 32, the Court allowed Madeline to proceed with her federal claims as well. It also provided her with two opportunities to amend her complaint. ECF Nos. 50, 101.

Of the twelve counts in Madeline's second amended complaint, ECF No. 140, nine are brought against Hartford Life. Those counts are: (1) breach of fiduciary duty; (2) neglect, imprudence, or want of skill; (3) failure to act in the beneficiaries' best interests; (4) misrepresentation; (5) failure to cooperate or comply with a probate court subpoena, appellate court order, and failure to report fraud; (6) misuse of superior knowledge; (7) aiding and abetting; (8) rendering inappropriate advice; and (9) breach of contract. Three forms of alleged misconduct serve as the basis for these nine counts: Hartford Life's failure to distribute the proceeds in accordance with the updated policies, *see id.* ¶ 344, Hartford Life's failure to release documents associated with these policies, *see id.* ¶ 341, and Hartford Life's failure to report fraud and other criminal acts. *See id.* ¶¶ 348, 349.

The allegations in some of these counts suggest that Madeline seeks to bring them under ERISA. *See id.* ¶ 340 (Count Two: "ERISA statute requires plan fiduciaries including HARTFORD LIFE [to] discharge their duties solely in the interest of the participants and beneficiaries."); *id.* ¶ 419 (Count Six: "Hartford Life had a duty to ensure the [proceeds] of Paul Fromageot's policies were properly [distributed] to his intended beneficiaries pursuant to the

8

Employee Retirement Income Security Act . . . ."); *id.* ¶ 478 (Count Eight: "Under ERISA all attorney's fees are reimbursed to beneficiaries."). Moreover, to the extent other counts allege a breach of fiduciary duty, *see, e.g.*, *id.* ¶ 405 (Count Five: The HARTFORD LIFE Breached their Fiduciary Duty by failing to 'fully cooperate' with the Trumbull Probate Court Subpoena . . . ."), the Court also construes those counts as being brought under ERISA, as the statute preempts any state or common law claim for breach of fiduciary duty. *See* 29 U.S.C. § 1144 ("[T]he provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title . . . ."); *Pelosi v. Schwab Cap. Markets, L.P.*, 462 F. Supp. 2d 503, 515 (S.D.N.Y. 2006) ("While the Complaint does not specifically assert the breach of fiduciary duty claim under ERISA, to the extent [the plaintiff] may intend to assert this claim under state statutory or common law, the claim is preempted by ERISA § 514.") (citing 29 U.S.C. § 1144).

In response to Madeline's second amended complaint, Hartford Life seeks dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 150. It argues that Madeline lacks standing, that her claims are time-barred, that her state law claims are preempted by ERISA, and that she has failed to plead facts sufficient to state a claim under ERISA or state law. *Id.* at 1-2.

## II. LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* In adjudicating a motion to dismiss under Rule 12(b)(1) on the pleadings, the court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor" except

9

for "argumentative inferences favorable to the party asserting jurisdiction." *Buday v. New York Yankees P'ship*, 486 F. App'x 894, 895 (2d Cir. 2012). Furthermore, the court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

To avoid dismissal under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). I accept as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and must "draw all reasonable inferences in favor of the nonmoving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted).

In reviewing Madeline's *pro se* complaint, I must construe it "to raise the strongest argument it suggests." *Darby v. Greenman*, 14 F.4th 124, 127 (2d Cir. 2021).

### III. DISCUSSION

Madeline is suing on behalf of herself, Paul's estate, her children, and her children's trusts. Hartford Life argues that she lacks standing to file suit in any of these capacities, and that, even if she has standing, her ERISA claims are time-barred. *See* ECF No. 150-3 at 19-25. Although she has standing under Article III of the Constitution, I find that Madeline, who is self-represented, cannot sue on behalf of the estate, her children, or their trusts and that any ERISA claims she brings in her individual capacity are time-barred.

At the pleadings stage, Madeline is entitled to the reasonable inference that, because the proceeds from Paul's policy were not deposited into the children's education funds, *see* ECF No. 140 ¶ 499, Madeline herself was left to foot any bills related to her children's schooling. This type of monetary injury is plainly sufficient to confer Article III standing. *See Natural Resources Defense Council, Inc. v. U.S. Food and Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013) ("Even a small financial loss is an injury for purposes of Article III standing.").

### A. On Behalf of the Estate of Paul Fromageot

While Article III imposes no jurisdictional barrier here, Madeline's claims on behalf of the estate founder on her *pro se* status. *See Cheung v. Youth Orchestra Foundation of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) (describing the right to proceed *pro se* as a "statutory right" under Section 1654 and declining to extend that right to a self-represented parent filing suit on behalf of her child); 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally . . . ."). Madeline brings claims on behalf of Paul's estate as its administrator, and "an administrat[or] . . . of an estate may not proceed pro se when the estate has beneficiaries . . . other than the litigant." *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997). That's because an "appearance pro se denotes . . . appearance for one's self," and "when an estate has beneficiaries . . . other than the administrat[or] . . . the action cannot be described as the litigant's own . . . ." *Id.*

Madeline has failed to allege she is the sole beneficiary of the estate. She alleges that Paul died intestate, ECF No. 140 ¶ 51, which, under Connecticut law, makes her and her children beneficiaries of the estate. *See* CONN. GEN. STAT. § 45a-437. Specifically, the intestate succession statute entitles Madeline to the first $100,000 of Paul's estate, with the remainder split evenly between Madeline, on the one hand, and the children, on the other. *See id.* § 45a-437(a)(3) ("If there is no will . . . the portion of the intestate estate of the decedent . . . which the surviving spouse

11

shall take is . . . if there are surviving issue of the decedent all of whom are also issue of the surviving spouse, the first one hundred thousand dollars plus one-half of the balance of the intestate estate absolutely."). The complaint also alleges that the children were intended beneficiaries of the estate. ECF No. 140 ¶¶ 27, 29, 42, 43(f), 71, 87. Though the complaint suggests that Madeline received the entirety of the estate because the estate was valued at less than $100,000, *see* ECF No. 140-1 at 3 (probate court document showing the assets and income of Paul's estate totaling $95,650), it nevertheless remains the case that, under Section 45a-437, Madeline's children are beneficiaries as a matter of law. *See also Daniels v. Daniels*, 115 Conn. 239, 239 (1932) ("The words ['legal heirs'] must be taken to mean those who would have been entitled to inherit from [the decedent] under our statutes of distribution, had he died intestate."). They accordingly retain a legal interest in their father's estate separate and apart from Madeline's own. *See Pridgen*, 113 F.3d at 393 (holding that the administrator may not proceed *pro se* on behalf of the estate "because the personal interests of the estate, other survivors, and possible creditors will be affected by the outcome of the proceedings.") (internal quotations omitted).

In response to Hartford Life's argument that Madeline lacks "standing" to bring claims on behalf of the estate, Madeline argues that fiduciaries, acting on behalf of plan beneficiaries, may sue under ERISA. ECF No. 157 at 5. This is an accurate statement of the law, s*ee* 29 U.S.C. § 1132(a)(3) ("A civil action may be brought . . . by a . . . fiduciary . . . ."), but it is also irrelevant. The issue is not whether a fiduciary may file suit on behalf of a beneficiary but whether a *pro se* litigant may file suit on behalf of an estate. Moreover, the cases Madeline cites—*Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96 (2d Cir. 2005) and *Halperin v. Richards*, 7 F.4th 534 (7th Cir. 2021)—are entirely inapposite.

Because Madeline has failed to allege she is the sole beneficiary of Paul's estate, she may not file suit on the estate's behalf. Madeline's claims brought on behalf of the estate are DISMISSED.

### B. On Behalf of the Children's Trusts

The same analysis applies to Madeline's claims as a trustee. Madeline cannot file suit as trustee while also representing herself—as courts in this Circuit have repeatedly made clear. *See Nasledie Davudova Express Tr. v. JP Morgan Chase Bank, Nat'l Ass'n*, No. 24-cv-7633, 2024 WL 4769687, at *2 (S.D.N.Y. Nov. 13, 2024) ("[A] nonlawyer trustee cannot bring claims on behalf of a trust."); *Aboretum Silverleaf Income Fund LP v. Katofsky*, No. 23-cv-1144, 2023 WL 3225063, at *3 (S.D.N.Y. Feb. 24, 2023) ("[A] non-attorney may not represent a trust *pro se*."); *AMA Acquisitions Tr. v. Argent Mortg. Co., LLC*, No. 16-cv-00244, 2016 WL 6068147, at *2 (N.D.N.Y. Oct. 14, 2016) ("A trust is also an entity, such as a corporation or partnership, that cannot be represented by a *pro se* nonlawyer trustee."). As discussed, Madeline's *pro se* status limits the legal interests she can represent to a narrow category—those belonging to her and her alone. And in filing suit on behalf of her children's trusts, Madeline seeks to represent third-party interests that fall well outside this ambit, namely, the interests of her children as trust beneficiaries. *See Pegram v. Herdrich*, 530 U.S. 211, 224 ("It is the duty of a trustee to administer the trust solely in the interest of the beneficiaries.") (citing 2A A. SCOTT & W. FRATCHER, TRUSTS § 170 (4th ed. 1987)). Because Madeline is not permitted to do so, the claims she brings on behalf of the trusts are DISMISSED.

### C. On Behalf of the Children

Madeline also brings claims as "natural mother" to her children. ECF No. 140 at 1. For the reasons previously discussed, she cannot bring claims in this capacity while also representing herself. *See also Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005) ("It is [ ] a

13

well-established general rule in this Circuit that a parent not admitted to the bar cannot bring an action *pro se* in federal court on behalf of his or her child."). Accordingly, any claims she brings on behalf of her children are DISMISSED.

### D. The ERISA Claims

Madeline also brings claims—including ERISA claims—in her individual capacity. Hartford Life argues that the ERISA claims are time-barred. Specifically, Hartford Life argues that Madeline cannot bring these claims because they are barred by "the contractual limitations provision contained in the [insurance policy] as well as the federal statute of limitations applicable to ERISA." ECF No. 150-3 at 21. I agree that her claims are time-barred by the terms of the policy. I therefore decline to address whether these claims are similarly barred by the statute of limitations.

"The principle that contractual limitations provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA plan." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013). The "plan, in short, is at the center of ERISA . . . And once a plan is established, the administrator's duty is to see that the plan is 'maintained pursuant to [that] written instrument.'" *Id.* (alterations in original). Accordingly, a court "must give effect to the Plan's limitations provision unless [it] determine[s] either that the period is unreasonably short, or that a controlling statute prevents the limitations provision from taking effect." *Id.* at 109 (internal quotations omitted).

Paul's policy bars claimants from filing suit against Hartford Life "3 or more years after the time proof of loss is required to be furnished,"[2] ECF No. 140-2 at 107; ECF No. 150-2 at 17,

---

[2] The complaint itself does not expressly allege this limitations provision. The provision is, however, contained in a copy of the policy attached as Exhibit E to Madeline's complaint, *see* ECF No. 140-2 at 94-113, which expressly relies on the terms of the policy. *See, e.g.*, ECF No. 140 ¶ 249 ("Attorneys DOMINIC CARUSO, WILLIAM J. BRITT, DREW BAUMAN, and SHARON QUINN each, had a duty to demonstrate the error was the employers, not Paul's who with care updated his HARTFORD LIFE Group and Optional life polices to include all four children as they were born and in compliance with the terms of the Hartford Life Booklet Policy.") (citing Exhibit E). I may therefore

14

and, under the terms of the policy, "[s]atisfactory written proof of loss must be sent to [Hartford Life] within 90 days after the date of such loss." ECF No. 140-2 at 102; ECF No. 150-2 at 12. Paul died on June 4, 2004, ECF No. 140 ¶ 50, and so proof of loss was due on September 2, 2004, and Madeline had until September 2, 2007 to file suit against Hartford Life. She did not do so until May 22, 2023—over 15 years late.

In response, Madeline does not attempt to invoke *Heimeshoff*'s exceptions by arguing that the limitations period "is unreasonably short" or that ERISA "prevents the limitations period from taking effect." *See Heimeshoff*, 571 U.S. at 109. Nor could she do so successfully, as the *Heimeshoff* Court found that a three-year limitations period was both reasonable and consistent with ERISA. *Id.* at 110, 115. Instead, Madeline argues that her suit is timely because of "Hartford [Life]'s concealment, misrepresentations, and refusal to comply with subpoenas[,] [which] delayed discovery," ECF No. 157 at 5, and because she filed this lawsuit within three years of the time her children reached the age of majority. *Id.* ("Children named as beneficiaries in the Hartford Life policies (JPF)(SF) named in the instant suit, filed within the three-year age of majority."). Madeline's second argument appears to be invoking a rule afforded by some state statutes of limitation that a cause of action held by a minor should be tolled until that minor reaches the age of majority. *See, e.g.*, *Hale v. Ne. Vermont Reg'l Hosp., Inc.*, No. 1:08-cv-00082, 2011 WL 13202229, at *1 (D. Vt. Dec. 9, 2011) ("The statute of limitation on a minor's cause of action is tolled until the minor reaches the age of majority" and citing 12 VT. STAT. ANN. § 551). State statutes of limitation—and even ERISA's statute of limitation—are irrelevant here, however, because the three-year limitations period is a creature of contract, not any statute. In any event,

---

consider it. *See DiFolco*, 622 F.3d at 111 ("A district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

15

and as previously discussed, I have already dismissed any claims Madeline brings on behalf of her children.

As to Madeline's first argument, it suggests that her delay in filing suit against Hartford Life was due to fraudulent concealment by Hartford Life.

<u>Fraudulent Concealment and Other Tolling Doctrines</u>

Equitable doctrines can prevent a party from raising a limitations defense in an ERISA action, even when that defense sounds in contract. *See Heimeshoff*, 571 U.S. at 114 (noting that "in the rare case" where plan participants are prevented from filing an ERISA claim within the contractual period, "courts are well equipped to apply traditional doctrines that may nevertheless allow participants to proceed"). If, for example, a plan "administrator's conduct causes a participant to miss the deadline for judicial review, waiver or estoppel may prevent the administrator from invoking the limitations provision . . . ." *Id.* One such equitable doctrine is the doctrine of fraudulent concealment. The purpose of the fraudulent concealment doctrine is to prevent a defendant from concealing the existence of a cause of action until that defendant can plead a limitations defense. *See State of N.Y. v. Hendrickson Bros.*, 840 F.2d 1065, 1083 (2d Cir. 1988) ("[T]he purpose of the fraudulent-concealment doctrine is to prevent a defendant from concealing a fraud, or . . . committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it.") (ellipses in original) (internal quotations omitted). "To show fraudulent concealment, a plaintiff must establish that: (1) the defendant concealed the existence of the cause of action from the plaintiff; (2) the concealment prevented plaintiff's discovery of the claim within the limitations period; and (3) the plaintiff's ignorance of the claim did not result from a lack of diligence." *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 143 (2d Cir. 2025). "A plaintiff can prove concealment by showing

16

'either that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing.'" *Id.* The doctrine, however, does not apply to Madeline's ERISA claims.

Madeline alleges that on January 20, 2011, Hartford Life sent Paul's parents a letter stating that the company had properly distributed the proceeds of Paul's policies. ECF No. 140 ¶ 343. The court in the New Jersey action used that letter as a basis to dismiss the unjust enrichment action against Paul's parents. *Id.* ¶ 273-74. But it wasn't until February 2021, after Hartford Life responded to the probate court's subpoena, that Madeline learned Paul's parents obtained this letter under false pretenses—namely, Paul's parents had falsely claimed to Hartford Life that Madeline was Paul's ex-wife. *Id.* ¶ 321 ("The Hartford Life Subpoena . . . caused the discovery of the fraud . . . the 'HARTFORD LIFE' letter of January 20, 2011 [was] obtained after claiming plaintiff was the ex-wife . . . ."). On May 19, 2022, Madeline informed Hartford Life of the fraud, *see* ECF No. 140-1 at 67 (letter to Hartford Life) ("As per my conversation May 19, 2022, with Jennifer M. in the Customer Relations Department, we have a federal crime going on in plain sight - Life Insurance Fraud."), and Hartford Life was "required to report [this] fraud to the appropriate law enforcement . . . ." ECF No. 140 ¶ 349. Because Hartford Life failed to do so, on November 4, 2022, Madeline filed an amended complaint invoking ERISA and adding Hartford Life as a defendant. *See* ECF No. 19-1. Under this sequence of events, Madeline became aware that Hartford Life breached its fiduciary duties and promptly filed suit.[3] Any delay in that filing was due to the fact that Hartford Life, rather than Madeline, was in possession of critical documents.

---

[3] To the extent Madeline is claiming that Hartford Life has violated ERISA by failing to report the "fraudulent" conduct of her in-laws, she fails to offer any analysis or authority for such a claim. Nor does she explain why she might have standing to pursue such a claim, i.e., how such an alleged "breach of fiduciary duty" harmed her.

17

There are several problems with Madeline's theory of fraudulent concealment. First, it does not allege any fraud by Hartford Life. To the contrary, it alleges that Hartford Life wrongly distributed the life insurance proceeds as a result of fraud by Paul's parents. The complaint pleads no facts suggesting fraudulent concealment by Hartford Life. Second, it appears to be based on conduct that occurred after the limitations period expired, and fraudulent concealment cannot toll a limitations period that has already expired. *Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105, 117 (S.D.N.Y. 2011), *aff'd*, 699 F.3d 141 (2d Cir. 2012) ("As to Plaintiff's first two allegations, this conduct allegedly took place in 2006, after the statute of limitations expired . . . In determining whether equitable tolling could apply because of fraudulent concealment, the tolling period cannot delay the expiration of a deadline when that deadline has already expired.") (internal quotations omitted).

The related doctrine of equitable tolling is likewise inapplicable. *See Saint-Jean*, 129 F.4th at 143 ("[The Second Circuit] has explicitly clarified that fraudulent concealment is not essential to equitable tolling.") (internal quotations omitted) Though Madeline does not invoke the doctrine in her response to Hartford Life's timeliness argument, *see* ECF No. 157 at 5, any attempt to do so would be unsuccessful. Like fraudulent concealment, equitable tolling cannot revitalize claims that expired before the conduct that serves as the basis of the tolling took place. *See Lopez v. Thermo Tech Mech. Inc.*, No. 20-cv-9113, 2023 WL 3756883, at *7 (S.D.N.Y. May 31, 2023) (collecting out-of-circuit cases and holding that, where plaintiff's claims "were already time-barred," those claims "cannot be revived through tolling"—notwithstanding defendants' conduct). Further, there is no discernible basis for equitable tolling here. Madeline knew of the facts required to bring her claims well before the limitations period had elapsed. Following an "ERISA investigation" initiated by Madeline's counsel on September 29, 2006, *id.* ¶ 228, Madeline

18

"learned for the first time that Paul [ ] did indeed update his policy to include all four children. *Id.* ¶ 76-77. Specifically, on October 20, 2006, the investigation yielded screenshots of the SAP enrollment software showing these updates. *Id.* ¶ 77 ("Proof of the updated enrollment came in the form of the SAP screenshots."); *id.* ¶ 27 ("[T]he SAP screenshots demonstrate Paul properly enrolled each of his children."). She had all the information she needed to bring any claims against Hartford Life for wrongful disbursement of life insurance proceeds by October 20, 2006—almost a year before the contractual limitations period expired.

And the complaint contains no facts suggesting an "extraordinary circumstance" that might otherwise entitle Madeline to equitable tolling. *See Saint-Jean*, 129 F.4th at 142 ("A district court may exercise its discretion to equitably toll the statute of limitations once a litigant has demonstrated that some extraordinary circumstance stood in her way and . . . that she has been pursuing her rights diligently."). While the complaint alleges that Madeline's previous attorneys engaged in "legal malpractice," *see* ECF No. 140 ¶¶ 551-62, and egregious attorney misconduct is sometimes an "extraordinary circumstance" warranting tolling a limitations period, *Baldavaque v. United States*, 338 F.3d 145, 152-53 (2d Cir. 2003) ("[A]n attorney's conduct, if it is sufficiently egregious, may constitute the sort of 'extraordinary circumstances' that would justify the application of equitable tolling . . . ."), Madeline's malpractice count is not predicated on any failure to bring ERISA claims against Hartford Life. *See* ECF No. 140 ¶¶ 551-62. Moreover, even if it were, Madeline would not be entitled to tolling unless she also exercised "reasonable diligence" in pursuing those claims. *See Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004) ("Even where the extraordinary circumstances . . . involve attorney incompetence, the petitioner must still demonstrate that he himself made reasonably diligent attempts to ensure that his petition was filed on time. In other words, the act of retaining an attorney does not absolve the petitioner of his

19

responsibility for overseeing the attorney's conduct or the preparation of the petition.") (internal citations omitted). The complaint, however, contains no facts that suggest Madeline asked her attorneys to bring ERISA claims against Hartford Life. Nor is there any indication that Madeline even inquired as to the possibility of bringing such claims.

Because the policy's three-year limitations period applies and because the complaint pleads no facts suggesting this limitations period should be tolled, Madeline's ERISA claims against Hartford Life are time-barred and therefore DISMISSED.

### IV. CONCLUSION

Having dismissed the federal claims in this action, I decline to exercise supplemental jurisdiction over the remaining state law claims Madeline brings in her individual capacity. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). Accordingly, those claims are dismissed without prejudice. Hartford Life's motion to dismiss (ECF No. 150) is GRANTED. All other pending motions are DENIED as moot. The Clerk is kindly directed to close this case.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
       December 3, 2025